UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIGAL TZAFIR, | CASE NO. 25-cv-2070-JHC-GJL |
| Petitioner, | ORDER |
| v. | |
| PAMELA BONDI et al., | |
| Respondent. | |

# I

## INTRODUCTION

This matter comes before the Court on Petitioner Sigal Tzafir's Motion for Emergency Temporary Restraining Order and Stay of Removal. Dkt. # 4. Petitioner seeks to prevent her removal from the United States and her transfer to another detention facility while her petition for habeas corpus is pending. *Id.*; *see* Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the motion, the rest of the case file, and the governing law. Being fully advised, the Court GRANTS the motion.

ORDER - 1

## II

## BACKGROUND

The facts are disputed.

According to Petitioner: She is a non-citizen currently detained at the Northwest ICE Processing Center (NWIPC) by U.S. Immigration and Citizenship Enforcement (ICE). Dkt. # 1 at 1. Her father is also in ICE custody. Dkt. # 4 at 2. Around midnight on October 30, 2025, Petitioner's father was slated to be transferred to another immigration detention facility, but this transfer was enjoined by another judge in this District. *Id.*; *see* Case No. 25-cv-02126-JLR-MJP, ECF No. 3. Because she is in the same factual and procedural position as her father, Petitioner is worried that she will also be imminently transferred or removed. Dkt. # 4 at 2.

Petitioner further alleges that she is stateless because she lost citizenship in the country of her birth, Israel, she has lived in the United States since she was an infant, and Israel has refused to issue her travel documents. Dkt. # 1 at 4–5. The Government has not designated any country to which it might attempt removal. Dkt. # 4 at 2.

According to Respondents: "Given the overwhelming volume of new habeas petitions and TRO motions currently being filed and the timeframe involved, [it] regretfully [is] unable to provide information specific to Petitioner's immigration history at this time[.]" Dkt. # 7.

In a prior Order, the Court provisionally granted Petitioner's motion "to maintain the status quo." Dkt. # 5 at 1. Now that full briefing has been submitted by the parties, the Court considers the merits of Petitioner's motion.

ORDER - 2

# III

## DISCUSSION

A.    Legal Standard

A temporary restraining order (TRO) is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). To obtain a TRO, Petitioner must show that (1) she is "likely to succeed on the merits"; (2) she is "likely to suffer irreparable harm in the absence of" a TRO; (3) "the balance of equities tips in h[er] favor"; and (4) a TRO "is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter,* 555 U.S. at 20) (these are the "*Winter* factors"). Alternatively, a petitioner who shows only that there are "serious questions going to the merits" can satisfy the *Winter* requirements by establishing that the "balance of hardships [] tips sharply towards [the petitioner]" and that the remaining two *Winter* factors are met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).

B.    Serious Questions Going to the Merits

A noncitizen's post-removal-period detention is limited "to a period reasonably necessary to bring about that [noncitizen's] removal from the United States. It does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A noncitizen's liberty interest is also "strong enough to raise a serious question as to whether, irrespective of the procedures used . . . the Constitution permits detention that is indefinite and potentially permanent." *Id.* at 696.

In *Zadyvydas v. Davis*, the Supreme Court found the indefinite detention of noncitizens to be unlawful. The *Zadyvydas* petitioners could not be removed because no country would accept them. *Id.* at 684–86. And the Supreme Court held that allowing the indefinite definition of

ORDER - 3

noncitizens would raise serious constitutional questions under the Due Process Clause of the Fifth Amendment, which applies to noncitizens. *Id.* at 690, 693. It also held that once removal was "no longer practically attainable," the period of detention becomes "indefinite" and "potentially permanent." *Id.* at 690–91. The *Zadyvydas* Court also set the period of detention that is presumptively reasonable at six months. *Id.* at 701. And it said that "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Petitioner here raises serious questions about whether she will be stuck in a "removable-but-unremovable limbo," much like the *Zadyvydas* petitioners. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (quoting *Jama v. Immigration and Customs Enf't*, 543 U.S. 335, 347 (2005)). She longer has citizenship in the country of her birth, Israel. Dkt. # 1 at 2. She has lived in the United States since she was an infant. *Id.* And Israel has refused to issue her travel documents. *Id.* at 2. So it remains unclear to where Petitioner would be removed. Although Petitioner has not been detained for six months, Respondents fail to address these issues. *See generally* Dkt. # 7. Instead, they generically point to their authority to detain and transfer noncitizens. *Id.* at 2. This does not meaningfully rebut the concern that Petitioner will be detained indefinitely because no country will accept her. So Petitioner satisfies the first *Winter* factor because she raises serious questions going to the merits of her detention.

C.     Irreparable Harm

Petitioner says that she faces the prospect of irreparable harm if she is transferred to another immigration detention facility or removed from the United States. Dkt. # 4 at 4. She contends that she would be harmed because she would be separated from her family, attorneys, and support system. *Id.* at 5. Respondents do not respond to these arguments. *See generally*

Dkt. # 7. And Petitioner does raise the prospect of irreparable harm, at a minimum because the Immigration and Nationality Act (INA) guarantees noncitizens the right to counsel of their choosing, at their own expense, in removal proceedings. 8 U.S.C. § 1362; 8 U.S.C. § 1229a(b)(4)(A). If Petitioner is transferred to an immigration detention facility in another part of the country, there is a real threat that she will be denied access to counsel of her choosing—a right guaranteed under the INA. *Id.* And Respondents have not shown that the requested temporary relief will unduly burden their time, resources, or personnel. Thus, Petitioner also satisfies the second *Winter* factor.

D.     Balance of Equities and Public Interest

If the Government is a party to a case, the final two *Winter* factors—the balance of equities and considering the public interest—merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The balance of equities tips away from the Government when it does not show that it will be harmed by a TRO. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (finding balance of equities favored granting a preliminary injunction where "[t]he government provide[d] almost no evidence that it would be harmed in any way by the district court's order, other than its assertion that the order enjoins 'presumptively lawful' government activity"). There is also "always a public interest in prompt execution of removal orders[.]" *Nken v. Holder*, 556 U.S. 418, 436 (2009). And the Ninth Circuit has acknowledged that "[t]he costs to the public of immigration detention are 'staggering[.]'" *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017).

As in *Rodridguez*, Respondents provide no evidence that they will be harmed in any way by a TRO, other than that the order will enjoin lawful government activity. Dkt. # 7 at 2; *see Rodriguez*, 715 F.3d at 1145. On the other hand, Petitioner shows that she faces significant harms if she is transferred to another immigration detention center or removed from the United

ORDER - 5

States. Dkt. # 4 at 4; *see* Section III.C, above. Thus, the balance of equities tips sharply in Petitioner's favor.

The strong public interest in prompt execution of removal orders is also furthered if Petitioner has ready access to her counsel. *See* Section III.C, above. And it is always in the public interest to ensure that the Constitutional rights of citizens and noncitizens are vigilantly protected. *See* Section III.B, above.

\*\*\*

In sum, Petitioner raises serious questions going to the merits of her detention, she shows that the balance of equities tips sharply in her favor, and her motion establishes that the other *Winter* factors are met. *See All. for the Wild Rockies*, 632 F.3d at 1131–35.

## IV

### CONCLUSION

For all these reasons, the Court grants Petitioner's Motion for a Temporary Restraining Order. Dkt. # 4.

The Court ORDERS that Respondents and all of their respective officers, agents, employees, attorneys, and other persons acting on their behalf, in concert, or in participation with them are temporarily enjoined and restrained from (1) removing Petitioner from this judicial district (i.e., the Western District of Washington) or (2) deporting the Petitioner from the United States. To the extent Respondents oppose this TRO, the Court DIRECTS the parties to meet and confer regarding a briefing schedule for a motion for a preliminary injunction and to submit a proposed schedule to the Court.

Dated this 10th day of November, 2026.

John H. Chun
United States District Judge

ORDER - 7