UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIGAL TZAFIR,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>PAMELA BONDI et al.,<br><br>　　　　　　Respondents. | CASE NO. 25-cv-2070-JHC-GJL<br><br>ORDER |

# I

### INTRODUCTION

This matter comes before the Court on Petitioner Sigal Tzafir's Petition for Writ of Habeas Corpus. Dkt. # 1. Tzafir says that her ongoing detention at the Northwest ICE Processing Center (NWIPC) violates federal law, including the Due Process Clause of the Fifth Amendment. *Id.* at 6–7. Respondents counter that she has been lawfully detained and is subject to mandatory detention. Dkt. # 14. The Court has reviewed the materials filed in support of and in opposition to the petition, the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the petition.

ORDER - 1

## II

## BACKGROUND

Tzafir entered the United States from Israel with her family on a B-2 Visitor's Visa in 1999. Dkt. # 1 at 4. At the time, she was a year old. *Id.*

In 2000, her family applied for asylum under the Convention Against Torture, but her B-2 Visa expired while awaiting adjudication of the asylum application. *Id.* In April 2004, an immigration court denied asylum relief and the court ordered her and her family to be removed to Israel. Dkt. # 15 at 2. The Board of Immigration Appeals affirmed this decision and in 2009 the removal order was administratively finalized. *Id.* Later that year, Tzafir and her family requested travel documents so they could return to Israel. *Id.* at 3. But the Israeli consulate informed Immigration and Customs Enforcement (ICE) that Petitioner and her family were no longer Israeli citizens, and that the consulate was directed not to issue travel documents. *Id.* ICE then released Petitioner on an Order of Supervision (OSUP), and she was required to regularly check in with the agency. *Id.*; *see* Dkt. # 1 at 5.

On August 14, 2025, around 26 years after she arrived in the United States, Petitioner was taken into ICE custody. Dkt. # 15 at 3. When she was detained, she was provided a Notice of Revocation of Release. *Id.* The document explains,

> This letter is to inform you that your order of supervision has been revoked and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.

Dkt. # 1-1. Respondents also aver that ICE Office of Enforcement and Removal Operations (ERO) revoked the OSUP because it determined Tzafir "could be removed pursuant to the final removal order and for the Israeli government's review of her case for issuance of a travel document." Dkt. # 15 at 3. While Petitioner was in ICE detention, the Court issued a Temporary

ORDER - 2

Restraining Order that prevented her from being removed from this judicial district and from being deported. Dkt. # 9.

### III

### DISCUSSION

A.      Legal Standard

Federal district courts have the authority to grant a writ of habeas corpus. 28 U.S.C. § 2241(a). But this relief can be extended only under certain conditions. *See* 28 U.S.C. § 2241(c). One such condition is if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" *Id.* The habeas petitioner must prove by a preponderance of the evidence that she is entitled to relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

B.      Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. And "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[1] "The fundamental requirement of due process is the opportunity to be heard 'at a

---

[1] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the court recognized that other circuits have applied the *Mathews* test to immigration detention due process challenges. *Id.* at 1206. The Ninth Circuit has "regularly applied *Mathews* to due

ORDER - 3

meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Petitioner seeks habeas relief, claiming that, among other things, her due process rights are being violated. Dkt. # 1 at 2, 7. She says that because her current detention violates the Due Process Clause of the Fifth Amendment, she is entitled to immediate habeas relief. *Id.* at 7. The Government responds that Tzafir is lawfully detained. Dkt. # 14 at 4–5. It asserts that her detention is required for pending removal proceedings, and that she has not shown that her detention is unreasonable or unjustified. *Id.*

1. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause

---

process challenges to removal proceedings." *Id.* And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id.*; *see Landon v. Plasencia,* 459 U.S. 21 (1982). The Court likewise applies the *Mathews* test here. *See also E.A. T.-B. v. Wamsley*, 2025 WL 2402130, at *3 (W.D. Wash. Aug. 19, 2025) (applying the *Mathews* test and collecting cases that employed this test in the context of immigration detention).

protects."). So it is unsurprising that even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482.

That the Government allowed Tzafir to remain in the community for more than 16 years after releasing her on supervision only strengthened her liberty interest. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (Governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982). During this time, she married, obtained a Bachelor's degree, and has been consistently checking in with ICE. Dkt. # 1 at 5. This illustrates that she was released long enough to "gain [a] foothold in the United States," and "'beg[an] to develop ... ties" in this country,' [so] 'h[er] constitutional status change[d] accordingly,' and she 'has a right to due process.'" *Pablo Sequen v. Kaiser*, 2025 WL 2650637, at *5 (N.D. Cal. Sept. 16, 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982)). But Tzafir has now been undeniably deprived of this interest because she was arrested in Oregon, transferred to the NWIPC, and remains detained today. *See* Dkt. # 15 at 3–4.

The Government responds that it has the authority to detain noncitizens during and following their removal proceedings, and that it may revoke an OSUP. Dkt. # 14 at 1–3. But this authority is beside the point; nor does Tzafir deny this. While the Government may detain noncitizens before removing them, noncitizens must still be afforded due process protections before they are detained. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). Accordingly, the first *Mathews* factor favors Tzafir.

2. Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

Here, the Government offers only conclusory statements to justify its decision to detain Tzafir. *See* Dkt. # 1-1. For instance, it says that ICE detained her "based on a review of [her] official alien file and a determination that there are changed circumstances in [her] case." Dkt. # 1-1. It similarly says, "ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you." *Id.* But the Government does not identify what changed circumstances justify her detention 16 years after placing her on an OSUP. The Government also says that ICE has requested travel documents from Israel, but it fails to explain why it believes this request will be granted now. *See* Dkt. # 15 at 3. When the Government similarly requested travel documents for Petitioner to return to Israel 16 years ago, this request was denied because she was not a citizen of Israel. *Id.* She is still not a citizen of Israel. *See* Dkt. # 16-1 at 2. Thus, the Government fails to support its contention that changed circumstances justify Petitioner's detention or that it can expeditiously remove Petitioner from the United States. This unsupported justification for Petitioner's detention runs contrary to one of the most fundamental requirements of due process—the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal citation and quotation marks omitted).

In addition, when she was released in 2009, Tzafir necessarily satisfied the Government that her release would "protect the public safety[.]" *See* 8 C.F.R. § 241.13(h)(1). Then, after being released, she dutifully checked in with ICE for 16 years. Dkt. # 1 at 5. She has also maintained her work authorization, graduated college, and not had any release violations. *Id.*

The Government's failure to articulate a change in circumstances between the time Tzafir was placed on supervision and re-detained shows that there is a significant risk of an erroneous deprivation of her liberty interest through the procedures used. *See Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest."); *see also E.A. T.-B. v. Wamsley*, 2025 WL 2402130, at *5 (W.D. Wash. Aug. 19, 2025) (collecting cases). Thus, the second *Mathews* factor favors Tzafir.

3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The Government has interests in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. But "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe*, 787 F. Supp. 3d at 1094). Thus, "the government's interest in detaining petitioner without a hearing is 'low.'" *Id.* (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *see E.A. T.-B.*, 2025 WL 2402130, at *5 (same). Petitioner has shown her diligence in appearing when required by the Government and the Government determined that she does not pose a danger to the community when it released her in 2009. *See* Section III.B.2, above. So this *Mathews* factor favors Tzafir too.

In sum, all three *Mathews* factors favor Tzafir. The Government's detention of Tzafir with no opportunity to be heard violates the due process protections afforded to her by the Constitution. As a result, she has proven by a preponderance of the evidence that she "is in

custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c).

## IV

### CONCLUSION

For all these reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. Dkt. # 1. The Court ORDERS that Petitioner must be released from custody immediately on the same conditions of release previously imposed before her arrest in 2025.[2] She may not be re-detained until after she is provided adequate notice and a hearing is held before an immigration court to determine whether detention is appropriate.

The Court also STRIKES the pending Motion for Preliminary Injunction as moot. Dkt. # 11.

The Clerk is DIRECTED to send uncertified copies of this Order to all counsel of record.

Dated this 24th day of December, 2025.

John H. Chun
United States District Judge

---

[2] *See Y.M.M. v. Wamsley*, 2025 WL 3101782, at *3 (W.D. Wash. Nov. 6, 2025).

ORDER - 8