UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SIGAL TZAFIR,

                   Petitioner,

       v.

TODD BLANCHE et al.,

                  Respondents.

CASE NO. 25-cv-2070-JHC-GJL

ORDER

# I

## INTRODUCTION

This matter comes before the Court on Petitioner's Application for Attorneys' Fees. Dkt. # 19. The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law. Being fully advised, for the reasons below, the Court GRANTS the motion in part.

# II

## BACKGROUND

Petitioner, then a year old, arrived in the United States from Israel in 1999 with her family on a B-2 visa. Dkt. # 1 at 4. After her B-2 visa expired, she was ordered removed to Israel in 2004. Dkt. # 15 at 2. The Board of Immigration Appeals affirmed this decision and in

ORDER - 1

2009 the removal order was administratively finalized. *Id.* Later that year, Petitioner and her family requested travel documents so they could return to Israel. *Id.* at 3. But the Israeli consulate informed Immigration and Customs Enforcement (ICE) that Petitioner and her family were no longer Israeli citizens, and that the consulate was directed not to issue travel documents. *Id.* ICE then released Petitioner on an Order of Supervision (OSUP), and she was required to regularly check in with the agency. *Id.*; *see* Dkt. # 1 at 5.

On August 14, 2025, around 26 years after she arrived in the United States, Petitioner was taken into ICE custody. Dkt. # 15 at 3. When she was detained, she was provided a Notice of Revocation of Release. *Id.* The document explains,

> This letter is to inform you that your order of supervision has been revoked and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.

Dkt. # 1-1. In her habeas proceeding, Respondents claimed that ICE Office of Enforcement and Removal Operations (ERO) revoked the OSUP because it determined Tzafir "could be removed pursuant to the final removal order and for the Israeli government's review of her case for issuance of a travel document." Dkt. # 15 at 3. This was the sole basis for the government's revocation of her OSUP. The government did not identify what changed circumstances justified her detention 16 years after the initial grant of the OSUP.

Petitioner filed a Petition for Writ of Habeas Corpus on October 22, 2025. Dkt. # 1. She argued that her ongoing detention violated 8 C.F.R. §§ 241.4(l), 241.13(i)(3), 1231(a), and the Due Process Clause of the Fifth Amendment. *Id*. at 6–8. On December 24, 2025, this Court granted the Petition. *See generally Tzafir v. Bondi*, 2025 WL 3724708, at *2 (W.D. Wash. Dec. 24, 2025) (appearing at Dkt. # 17).

ORDER - 2

Petitioner now moves for attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, contending that she is the prevailing the party, that the government's position was not substantially justified, and further, that she is entitled to an enhanced fee award reflecting her counsel's specialization and skill. *See generally* Dkt. # 19.

### III

### DISCUSSION

Section 2412(b) of the EAJA provides that, "[u]nless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought . . . against the United States[.]" 28 U.S.C. § 2412(b). But if a court "finds that the position of the United States was substantially justified or that special circumstances make an award unjust," fees will not be awarded. 28 U.S.C. § 2412(d)(1)(A).

A.     Entitlement to Attorney Fees

Respondents concede that Petitioner is the prevailing party but argue that their position was substantially justified. *See* Dkt. # 20 at 1–3. They argue principally that this Court's conclusion, in applying the test under *Mathews v. Eldridge*, that Petitioner's private interests outweigh the government's "does not render the [] Respondents' position unjustified." *Id.* at 3. They also argue that, because this Court granted Petitioner's habeas petition on an argument she did not raise, their position was substantially justified. *Id.* at 2–3 (citing *Johnson v. Berryhill*, 2018 WL 11433969, at *3 (E.D. Mich. Aug. 3, 2018)). Petitioner argues that Respondents cannot show that their position was substantially justified because they "ignored the due process protections afforded to noncitizens" and because of their conduct with Petitioner during her detention. *See* Dkt. # 19 at 6.

"To be substantially justified, the government's position must have . . . 'had a reasonable basis in law and fact.'" *Meza-Vazquez v. Garland*, 993 F.3d 726, 729 (9th Cir. 2021) (quoting

*Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)).  "The test is not whether the government was correct, but whether it was 'for the most part' justified in taking the position that it did."  *Id.*  "A position that 'was not contrary to clearly established law' is thus substantially justified."  *Id.* (citing *Li v. Keisler*, 505 F.3d 913, 919–20 (9th Cir. 2007)).  "For the purposes of the EAJA, the government's 'position' includes 'both the government's litigation position and the action or failure to act by the agency upon which the civil action is based.'"  *Benally v. U.S. Off. of Navajo & Hopi Indian Relocation*, 154 F.4th 630, 638 (9th Cir. 2025) (citing *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1168 (9th Cir. 2019) (citation modified).  The question is here is thus whether the government's re-detention of Petitioner and Respondents' litigation position that due process did not afford her such a hearing before her re-detention were "contrary to clearly established law" at the time.  *Li*, 505 F.3d at 919–20.

The government's actions in re-detaining Petitioner were contrary to clearly established law and thus lacked substantial justification.  Generally, when revoking a noncitizen's OSUP, the government must articulate changed circumstances in the noncitizen's case.  But here, the Court concluded that, despite the government's assertions, Petitioner's revocation notice did not explain what the changed circumstances supposedly were, nor did it provide any other justification to re-detain Petitioner or revoke her OSUP.  *See* Dkt. # 17 at 6.  Respondents' contention that the government's revocation of Petitioner's OSUP was based on "its belief that she could be removed in the reasonably foreseeable future," Dkt. # 20 at 7, does not hold water.  As the Court reasoned in its order granting the habeas petition, "the government does not identify what changed circumstances justify her detention 16 years after placing her on an OSUP."  *Tzafir*, 2025 WL 3724708, at *3.  At the time of Petitioner's re-detention, there was no evidence at the time that Israel had changed its position on her citizenship and was willing to accept her; nor was there any evidence that any other country to which she may have had a tie would accept

ORDER - 4

her.  Nor did the government aver that it had even made contact with Israeli authorities (or those of any other country) for the purposes of securing travel documents.  In sum, the government's actions in re-detaining Petitioner were contrary to clearly established law and thus lacked substantial justification.  For the same reason, the government's litigation position, which defended these actions, lacked substantial justification.[1]

Based on the above, the Court concludes that Petitioner is entitled to attorney fees.  The Court need not consider Petitioner's argument that she is entitled to attorney fees under the common law based on bad faith.  Dkt. # 21 at 7–9.

B.    Amount of Attorney Fees

Petitioner seeks an enhanced rate for the attorney fees because of the putatively "'distinctive knowledge or specialized skill needful for the litigation in question.'"  Dkt. # 19 at 9 (citing *Pierce*, 487 U.S. at 572).  EAJA permits enhanced hourly rates "based on the special factor of the limited availability of qualified attorneys for the proceedings involved," where such attorneys "possess [1] 'distinctive knowledge' and 'specialized skill" that was [2] 'needful to the litigation in question' and [3] 'not available elsewhere at the statutory rate.'"  *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009) (citing *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005)).  The movant "bears the burden of" meeting the three-part test.  *Love v. Reilly*, 924 F.2d 1492, 1500 (9th Cir. 1991) (Wallace, J., concurring in part) (citing *Pirus v. Bowen*, 869 F.2d 536, 542 (9th Cir. 1989)).

---

[1] The Court disagrees with Respondents' contention that it should matter that the Court "ultimately addressed none of Petitioner's arguments in granting the habeas petition on due process grounds."  Dkt. # 20 at 2.  Respondents rely on *Johnson*, which is not binding here; but that case ultimately turned on the reasonableness of the government's litigation position.  *See* 2018 WL 11433969, at *3.  It does not stand for the more general proposition for which Respondents offer it.

ORDER - 5

To the first and second elements, Petitioner says her counsel possessed specialized knowledge of immigration law and "specifically of the law governing removal and of the day-to-day process of removal." Dkt. # 19 at 10. She claims that many immigration lawyers do not practice removal defense and do not possess knowledge "of the intersection of these bodies of law," i.e., immigration law and constitutional law. *Id.* at 11. To the third element, Petitioner asserts with little argument that "there were no attorneys available with the specialized knowledge required for this litigation who would handle this case at the EAJA rates of approximately $250 per hour." *Id.* at 12. In support of this contention, Petitioner submits a declaration from another attorney, not her counsel, asserting that "I do not believe it would have been possible to find an attorney willing to represent [Petitioner] at the statutory EAJA rate of approximately $250 per hour." Dkt. # 19-5 ¶ 8 (declaration of Melissa Campos-Castaneda).

Petitioner also bases the request for the enhanced fee on the case of *Rahman v. Bondi*, which approved the higher rate for the same counsel. *See* Dkt. # 21 at 14 (citing Dkt. # 53, *Rahman v. Bondi*, No. 24-2132-JHC-TLF, 2026 WL 323046, at *5 (W.D. Wash. Feb. 6, 2026)). There, counsel used the same declaration from the same individual to justify the enhanced fee request. Counsel has also used the same declaration in a more recent EAJA fees petition. *See* Dkt. # 21, *Binyamin Tzafir v. Blanche*, No. 2:25-cv-02126-JHC (W.D. Wash. Apr. 13, 2026).

Here, Petitioner is not entitled to the enhanced rate because there are, apparently, attorneys willing to take cases at the EAJA statutory rate. Respondents cite a case from this District where attorneys were recently willing to work at the EAJA statutory rate, undercutting Petitioner's argument that no attorneys are available to do so. *See* Dkt. # 20 at 4–5 (citing *M.M. v. Hermosillo*, No. 25-2074-TMC, 2026 WL 252076 (W.D. Wash. Jan. 30, 2026) (motion showing that "Petitioner requests fees and costs at the statutory EAJA rate, adjusted for cost of

ORDER - 6

living in the Ninth Circuit, for time reasonably expended on this case")).[2] No party cited this case to the *Rahman* court. Given *M.M. v. Hermosillo*, the Court does not believe Petitioner has satisfied her burden to show that qualified attorneys were not available elsewhere at the statutory rate; notably, Petitioner had the opportunity to address this issue on reply.

**IV**

**CONCLUSION**

For the reasons above, the Court GRANTS the motion in part and awards Petitioner $4,497.20 in attorney fees.

Dated this 21st day of May, 2026.

John H. Chun
United States District Judge

---

[2] *Cf. Y.M.M. v. Wamsley*, 2026 WL 809581 (W.D. Wash. Mar. 24, 2026) (attorney fees at statutory rate sought by NWIRP and awarded).

ORDER - 7